IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEAN-MARIE VIANNEY MUDAHINYUKA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 10 C 5812 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Petitioner Jean-Marie Vianney Mudahinyuka has filed a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." (Dkt. No. 1.) The government has responded and, for the reasons set forth below, petitioner Mudahinyuka's motion is dismissed as untimely.

BACKGROUND

On October 7, 2004, Jean-Marie Vianney Mudahinyuka ("Mudahinyuka") pleaded guilty to two counts of making false statements when applying for a document required for admission to the United States, in violation of 18 U.S.C. § 1546(a), one count of making false statements in an interview with an officer of the Immigration and Naturalization Service, in violation of 18 U.S.C. § 1001(a)(2), and one count of assault on federal officers using a deadly weapon and inflicting bodily injury, in violation of 18 U.S.C. § 111(b). *United States v. Mudahinyuka*, 04 CR 471 (N.D. Ill.) (Dkt. Nos. 34, 36).

1

Specifically, Mudahinyuka admitted that, on June 7, 1999, he assumed the false name of "Thierry Rugamba," falsely claimed to have been born in Burundi, and falsely claimed to be a citizen of Burundi when applying for a United Nations High Commission on Refugees ("UNHCR") Resettlement Registration Form; that, on April 4, 2000, he again assumed the false name of "Thierry Rugamba," falsely claimed to have been born in Burundi, and falsely claimed to be a citizen of Burundi when filling out an "Immigration and Naturalization Form I-590, Registration for Classification as Refugee" and an "Immigration and Naturalization Form G-646, Sworn Statement of Refugee Applying for Entry into the United States;" that, on April 12, 2000, he falsely stated and represented in an interview with an Immigration and Naturalization Service Officer that his name was "Thierry Rugamba;" and that, during the course of his May 12, 2004 arrest, he forcibly resisted United States Immigration and Customs Enforcement agents and caused them bodily harm by grabbing the shotgun of one of the agents and hitting the agent across the head with it and breaking the finger of another agent during the course of the ensuing struggle. *United States v. Mudahinyuka*, 04 CR 471 (N.D. Ill.) (Dkt. No. 36 ("Plea Agreement") ¶ 5). Mudahinyuka's real name is Jean-Marie Vianney Mudahinyuka, he was born in Rwanda, and he is a citizen of Rwanda. (*Id.*)

On June 14, 2005, this court sentenced Mudahinyuka to 51 months of imprisonment, followed by a three-year term of supervised release. *United States v. Mudahinyuka*, 04 CR 471 (N.D. Ill.) (Dkt No. 48). In accordance with the waiver provisions set forth in his Plea Agreement, Mudahinyuka did not appeal his conviction or sentence. (Plea Agreement ¶¶ 11-12.)

Because Mudahinyuka had been convicted of an "aggravated felony" as set forth in 8 U.S.C. § 1101(a)(43), the Department of Homeland Security ("DHS") thereafter commenced

expedited removal proceedings against Mudahinyuka pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and ultimately ordered Mudahinyuka removed to Rwanda. *See Mudahinyuka v. Holder*, No. 09-3255 (7th Cir.) (Dkt. No. 36 ("8/10/2010 Order")) at 2.) Mudahinyuka then applied for withholding of removal and protection under the Convention Against Torture ("CAT"), arguing that he would be subject to persecution and torture if returned to Rwanda, where he has been accused of participating in the 1994 Rwandan genocide. (*Id.*)

The immigration judge ("IJ") presiding over Mudahinyuka's case held that Mudahinyuka was ineligible for withholding of removal under either the Immigration and Nationality Act or the CAT, because his conviction under 18 U.S.C. § 111(b) for assaulting federal officers was a "particularly serious crime." (*Id.* at 4.) In the alternative, the IJ found Mudahinyuka to be barred from relief under the Immigration and Nationality Act because he participated in the persecution of Tutsis in the 1994 Rwandan genocide. (*Id.*) Finally, the IJ also determined that Mudahinyuka did not qualify for deferral of removal under the CAT because he failed to demonstrate that it is more likely than not he will be tortured if removed to Rwanda. (*Id.*)

The IJ's decision was upheld in all material respects by the Board of Immigration Appeals ("BIA"), which adopted and supplemented the IJ's decision. (*Id.*) Mudahinyuka then appealed the BIA's decision to the United States Court of Appeals for the Seventh Circuit. Noting its lack of jurisdiction, the Seventh Circuit declined to disturb the IJ's decision regarding Mudahinyuka's commission of a "particularly serious crime" and the resultant statutory bar, and declined to address the IJ's alternative holding that Mudahinyuka was ineligible for withholding of removal because he participated in the 1994 genocide. (*Id.* at 5 n.1.) The Seventh Circuit denied Mudahinyuka's petition for review as it pertained to his request for deferral of removal

under the CAT, finding that Mudahinyuka had a reasonable opportunity before the IJ to present evidence in his favor and that the IJ applied the correct standard for the admission of expert testimony. (*Id.* at 5-7.)

Mudahinyuka filed the pending § 2255 motion on September 14, 2010. *United States v. Mudahinyuka*, 10 C 5812 (N.D. Ill.) (Dkt. No. 1 ("Mudahinyuka Pet.")). It is this court's understanding that, as of the date of this order, Mudahinyuka remains in federal custody awaiting removal to Rwanda.

## LEGAL STANDARD

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence" by arguing that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a) (in relevant part). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon." 28 U.S.C. § 2255(b); *see Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010).

Generally, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review under § 2255 in the absence of cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003). However, a claim for ineffective assistance of trial counsel may be raised for the first time on collateral review. *Id.* at 509.

## ANALYSIS

On March 31, 2010, the Supreme Court of the United States held that, to be constitutionally effective, counsel "must inform her client whether his plea carries a risk of

deportation." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (Mar. 31, 2010). Mudahinyuka argues that his trial counsel was constitutionally ineffective, because he failed to "advise defendant of the immigration consequences of his guilty pleas." (Mudahinyuka Pet. ¶ 12.) Specifically, Mudahinyuka alleges that he was not advised that his conviction under 18 U.S.C. § 111(b) would "expose[ ] [him] to expedited removal from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii)." (*Id.*) Mudahinyuka asserts that, had he been properly advised, "he would not have entered guilty pleas because he believes he faces torture and death if he is deported to Rwanda." (*Id.*) Mudahinyuka further argues that, in light of these circumstances, the Plea Agreement was not "knowing and intelligent" when made. (*Id.*)

Motions brought under § 2255 are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). This one-year period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Mudahinyuka's Judgment and Commitment Order was entered on June 23, 2005, and his conviction became final on July 8, 2005. *See United States v. Mudahinyuka*, 04 CR 471 (N.D. Ill.) (Dkt No. 48); Fed. R. App. P. 4(b)(1) (2005). Because Mudahinyuka's pending § 2255 motion was not filed until September 14, 2010, it falls well outside the one-year statute of

limitations as measured by § 2255(f)(1).

In his reply brief, Mudahinyuka argues that his motion is timely if the limitations period is measured from the date of the *Padilla* decision on March 31, 2010, pursuant to the provisions set forth in § 2255(f)(3).

District courts have issued divergent opinions on the question of whether *Padilla* "created a newly recognized right that is retroactively applicable to cases on collateral review." *United States v. Gutierrez Martinez*, Criminal No. 07-91(5) ADM/FLN / Civil No. 10-2553 ADM, 2010 WL 5266490, at *2-3 (D. Minn. Dec. 17, 2010) (collecting cases). Some district courts, including the Southern District of California, the Eastern District of Michigan, and the Eastern District of New York, have held that *Padilla*'s application of *Strickland* did not create a "new" rule, thus barring application of § 2255(f)(3). *See, e.g., Luna v. United States*, No. 10CV1659 JLS (POR), 2010 WL 4868062, at *3-4 (S.D. Cal. Nov. 23, 2010); *United States v. Shafeek*, Criminal Case No. 05-81129 / Civil Case No. 10-12670, 2010 WL 3789747, at *3 (E.D. Mich. Sept. 22, 2010); *Gacko v. United States*, No. 09-CV-4938 (ARR), 2010 WL 2076020, at *3 (E.D.N.Y. May 20, 2010); *see also United States v. Chaidez*, 730 F. Supp. 2d 896, 904 (N.D. Ill. Aug. 11, 2010) (holding that *Padilla* "did not announce a new rule" in the context of a petition for writ of error coram nobis). Other district courts, including the District of Nebraska and the District of New Jersey, have held that *Padilla* did announce a "new constitutional rule," stressing that the result in *Padilla* was not dictated by precedent in the majority of the federal courts, but have further held that *Padilla* should *not* be considered retroactive for this very reason. *See, e.g.,. United States v. Perez*, No. 8:02CR296, 2010 WL 4643033, at *2 (D. Neb. Nov. 9, 2010); *United States v. Gilbert*, No. 2:03-cr-00349-WJM-1, 2010 WL 4134286, at *3

(D.N.J. Oct. 19, 2010).

The requisite elements of § 2255(f)(3) are difficult to establish, in light of Supreme Court precedent generally holding that "new" constitutional rules of criminal procedure should not be applied retroactively to cases on collateral review. *See Teague v. Lane*, 489 U.S. 288, 310 (1989).[1] This court is not aware of any decision by a state or federal court holding that the Supreme Court recognized a new right in *Padilla* that is also retroactively applicable to cases on collateral review.[2] Mudahinyuka, himself, takes the position that "[t]here is nothing new about" the holding in *Padilla*. *United States v. Mudahinyuka*, 10 C 5812 (N.D. Ill.) (Dkt. No. 15 ("Mudahinyuka Reply") at 6.) This court is therefore not persuaded that § 2255(f)(3) should be applied to re-start the limitations period for Mudahinyuka's claims. Therefore, Mudahinyuka's § 2255 motion is dismissed as untimely under § 2255(f).

This court makes no determination regarding Mudahinyuka's ability to satisfy the *Strickland* two-part test for ineffective assistance of counsel, but notes that Mudahinyuka's guilty plea probably "had no bearing on his deportability." *Gutierrez Martinez*, 2010 WL

---

[1] There are two exceptions to this "general rule." *Teague*, 489 U.S. at 310. The first exception applies if the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* at 311 (internal quotations omitted). The second exception applies if the new rule "requires the observance of those procedures that are implicit in the concept of ordered liberty." *Id.* (internal quotations omitted). This second exception is "reserved for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding," and the Supreme Court "[has] yet to find a new rule that falls under the second *Teague* exception." *Beard v. Banks*, 542 U.S. 406, 417 (2004) (internal quotations omitted). Mudahinyuka does not argue that either of the *Teague* exceptions applies to the holding in *Padilla*.

[2] *Cf. People v. De Jesus*, No. 10335/98, 2010 WL 5300535, at *9 (N.Y. Sup. Dec. 24, 2010) (unpublished opinion) (declining to hold whether the Supreme Court in *Padilla* "announced an important new rule of constitutional criminal procedure," but noting the court's position that "retroactive application of *Padilla* is compelled by *Teague*, to the extent *Padilla* could be said to announce a new rule").

7

5266490, at *4 (D. Minn. Dec. 17, 2010). Mudahinyuka has argued that he would not have pleaded guilty to the charge of assaulting a federal agent if he had known "that it would subject him to mandatory removal to Rwanda." (Mudahinyuka Reply 8.) In support of this argument, Mudahinyuka notes that the Plea Agreement erroneously suggested that he would be eligible to apply for withholding of removal. (*See* Plea Agreement ¶ 13 ("[Mudahinyuka] does not, however, waive his right to apply for relief from removal in the form of a withholding of removal or pursuant to [CAT,] the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment").) In fact, the IJ found that Mudahinyuka was "statutorily ineligible for withholding of removal under the Immigration and Nationality Act" and under the CAT, "because his conviction for assaulting federal officers was a 'particularly serious crime.'" (8/10/2010 Order 4.)

Mudahinyuka's assertion that he would have proceeded to trial is at least somewhat credible, in light of his stated belief that "I will be persecuted and/or tortured if I am removed to Rwanda" and his argument that he now understands "entering into the Plea Agreement made that fate certain." (Mudahinyuka's Reply, Ex. 1 ("Mudahinyuka Aff.") ¶ 19c, 19d.) However, it is also true that the IJ's alternative holdings—that Mudahinyuka was "barred from relief under the Act because he participated in the persecution of Tutsis in the 1994 genocide" and that he did not qualify for deferral of removal under the CAT because "he had failed to demonstrate it is more likely than not he will be tortured if removed to Rwanda" (8/10/2010 Order 4)—leave Mudahinyuka subject to deportation even without application of the statutory bar. At least one district court judge, in the District of Minnesota, has held that an illegal alien who was "subject to deportation both before and after his guilty plea" could not establish prejudice under

circumstances similar to those presented here by Mudahinyuka. *Gutierrez Martinez*, 2010 WL 5266490, at *4 (D. Minn. Dec. 17, 2010). This court agrees.

## CONCLUSION

For the reasons set forth above, petitioner Jean-Marie Vianney Mudahinyuka's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Dkt. No. 1) is dismissed as untimely.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:   February 7, 2011